FOSTER v. ROSE et al.

No. 33958. Dec. 4, 1951.

*238 P. 2d 332.*

Ted Foster, pro se, and Roger L. Stephens, Oklahoma City, for plaintiff in error.

Harry W. Priest, R. A. Belisle, and Eugene P. Ledbetter, Oklahoma City, for defendant in error Ben N. Hatcher.

Russell Morgan, Oklahoma City, for defendants in error Harry Rose and Rollie D. Rose.

HALLEY, V. C. J. Ted Foster, executor of the estate of Cleveland L. Rose, deceased, as plaintiff, alleged in his petition that Harry Rose, Rollie D. Rose, and Ben N. Hatcher had concealed, embezzled, smuggled, conveyed, or disposed of certain money which belonged to Cleveland L. Rose in his lifetime, and sought to recover under the provisions of sec. 292, 58 O.S. 1941, providing for the recovery by decedent's legal representative of double the value of money or other property wrongfully taken or withheld. The parties occupy the same positions here as they did in the lower court, so will be referred to as "plaintiff" and "defendants."

The sums alleged to have been unlawfully appropriated by defendants consisted of one sum of $3,500 and one of $50 in cash. Defendants claimed that these sums constituted gifts inter vivos by decedent to Harry Rose and Rollie D. Rose, respectively. Harry Rose was the only surviving brother and Rollie D. Rose a nephew of decedent. Ben N. Hatcher had been the attorney for Harry Rose for a number of years, and the $3,500 came into his hands through Rollie D. Rose, the agent of Cleveland L. Rose.

The case was tried to the court, which rendered judgment against Rollie D. Rose for $100, being double the amount held by him, but held that the $3,500 purported gift to Harry Rose was valid and rendered judgment against the plaintiff on that item. The $50 held by Rollie D. Rose is not involved in this appeal.

The plaintiff has appealed and contends that the findings and judgment of the trial court are not supported by the evidence and are contrary to the evidence and to the law; and that the court's holding that the gift to Harry Rose was completed during the lifetime of decedent by delivery thereof to Ben N. Hatcher as agent and attorney or as trustee for Harry Rose was not supported by the evidence.

It is correctly urged that after the death of the donor a gift inter vivos may be established only by evidence that is "clear, explicit and convincing", and that the three principal elements necessary to establish such a gift are: an intention to give on the part of the donor, a complete delivery of the gift, and acceptance by the donee.

Cleveland L. Rose, often referred to in the record as "Doc" Rose, was an elderly, uneducated man residing in Oklahoma City. He had been divorced from his wife. Harry Rose, his only

surviving brother, and Rollie D. Rose, a nephew, also residing in Oklahoma City, appear to have been his only near relatives. Harry Rose was an oil-field worker and had left Oklahoma City in the early part of 1947, and did not return until after the death of Cleveland L. Rose, who appears to have placed great confidence in his nephew, Rollie D. Rose.

Cleveland L. Rose had acquired a residence rental property in Oklahoma City and had been sued by the O. P. A. This case appears to have been settled, but he apparently lived in fear of another suit. He slashed his throat, and was under the care of a doctor until the night of June 30, 1947, when he committed suicide by jumping out of a window of the Wright Building in Oklahoma City.

A few days before his death, Cleveland L. Rose sold his property for $3,500 in cash. The property was reported to be worth more than double that amount. He went to the place of business of Rollie D. Rose and gave him $2,100 in currency and told him he wanted him to give that money to his brother Harry Rose, and instructed Rollie to see that he got it. Shortly thereafter he called and asked Rollie to come to see him, and upon his arrival gave him an additional $1,400, with the same instructions about giving it to Harry Rose. Rollie D. Rose became alarmed and filed in the county court a petition to be appointed guardian of his uncle, alleged to be incompetent, and also had the firm of Hatcher & Hatcher file a "Notice to the World" that action to recover the property of Cleveland L. Rose was contemplated.

Rollie D. Rose consulted with Ben N. Hatcher and requested that he go with him to see his uncle. Cleveland L. Rose told them that he wanted no action taken to set aside his conveyance, and reiterated that he wanted the money he had given to Rollie to go to his brother, Harry Rose. He advised them that the plaintiff herein was his attorney. The guardianship and the contemplated action to recover the property were abandoned. Rollie D. Rose knew that Ben N. Hatcher represented Harry Rose. His uncle told Rollie to give the money to Ben N. Hatcher to give to Harry Rose, and this was done. Mr. Hatcher then went to the bank and put the money in the form of a cashier's check payable to himself.

After the death of Cleveland L. Rose, the executor, plaintiff herein, started probate proceedings and requested both Rollie D. Rose and Ben N. Hatcher to turn over to the coroner or to him as executor the money they admitted they had received from Cleveland L. Rose. They refused to do so. The executor instituted "discovery" proceedings in the county court in an effort to find out what assets of the estate defendants had or knew of, and defendants appeared and testified generally to the facts above set out. Their testimony was taken and transcribed, and much of it was introduced in the trial of this case in the district court. There are some discrepancies between the testimony taken in the county court and that given in the district court, but the trial court held that it was not materially different.

We shall first discuss whether or not the evidence justified the finding of the court that Cleveland L. Rose intended to make a gift of $3,500 to his brother, Harry Rose. The facts and circumstances surrounding the parties, their relationship, and the direct expressions of the decedent should all be taken into consideration in determining the intention of the donor. We think it clear that Cleveland L. Rose intended to take his own life at the time he delivered the money to Rollie D. Rose and told him that he wanted it given to his brother, Harry Rose. He was despondent and told Rollie that he did not want any receipt for the $2,100. His housekeeper had offered him a bundle of his private papers but he had declined to take them, saying that he did not need them. The $3,500 left for Harry Rose apparently left Cleveland L. Rose

with little money or property. Harry Rose was his only living brother. There is no direct expression of his intention to end his own life, but many circumstances point to such intention, and it seems only natural that he should want what he had to go to his only brother.

The direct expressions of Cleveland L. Rose as to his intentions to make a gift to his brother are numerous. There is the testimony of three disinterested witnesses bearing upon his desire and intention to make a gift to his brother. Some three or four weeks before his death, Cleveland L. Rose met J. G. Lilly on the street. They were old acquaintances. Lilly testified:

"Q. Tell the court the conversation there you had with him, about the last time you talked to him. A. I said Doc, you need some more life insurance. . . . Well, he told me he was having trouble with the O.P.A., and he couldn't take it, and he said: 'I am going to sell everything I have, and I am going to give it to my brother.'

"Q. Did he tell you what brother? A. Harry."

Mrs. Daisy Shaw, an elderly lady who managed the rental property of Cleveland L. Rose for some time, testified that after Rollie D. Rose and Ben Hatcher had talked to Mr. Rose there at the home, she thought she would have to move, and when Mr. Rose came into the house she offered him some of his private papers but he declined to take them, saying he would not need them and for her to keep them.

Lloyd Grable did not know Cleveland L. Rose, but rented a shop from Rollie D. Rose in Oklahoma City and they shared the same desk. He testified that a man came to the shop and gave Rollie a considerable sum of money and told him to "give it to Harry."

Rollie D. Rose testified as follows:

"Q. All right; tell the court what he said to you. A. He came to the shop and stood there a few minutes, while I was busy, and I finished that thing there and stepped up to him and he started telling me that they were after him now on his O.P.A., and I told him: 'Why don't you go to California and live with your nephew, and let me handle it for you, your property, and quit worrying and drop it for a while.' He said 'Well, it's too late for that now.' I asked him what he meant, and he didn't answer me, but put his hand in his pocket and pulled out some money and give it to me.

"Q. How much was it? A. Well, there was quite a bit more than he had given me, and he gave me $2,100.00, and he said, 'Take this; I am giving this to my brother Harry; see that he gets it.' 'When will he come home?' 'I don't know; you will probably see him before I will, and I want you to give it to him.' "

In regard to the other $1,400, Rollie said:

"Q. When did you hear from him again? A. Well, he called me, I don't remember whether it was the next day or the day after that, but it was one of the two days, and asked me to come over, he wanted to see me.

"Q. Wanted you to come over; did you go? A. I went over, and I couldn't drive right in toward his house, but he was on the front porch and he came out, and I opened the door there, and he got in the car.

"Q. Did he give you any money at that time? A. He got in the car and we had a conversation. He pulled out an envelope, and he never carried a billfold, but he pulled out an envelope, and he gave me a thousand-dollar bill and four one-hundreds, $1400.00, at that time, and handed it to me, and said, 'I am giving this to Harry; I want you to see that he gets all of it. I am leaving it in your care.' "

The testimony is clearly sufficient to establish an intention on the part of the donor, Cleveland L. Rose, to make a gift to his brother, Harry L. Rose. Less proof is required to sustain a gift inter vivos to a brother or near blood relative than if it had been one to a stranger. In re Leadenham's Estate, 289 Pa. 216, 137 A. 247.

It is true that upon receipt of the $2,100, Rollie D. Rose prepared a re-

ceipt. The donor told him that he wanted no receipt. The receipt prepared by Rollie indicated that the money was turned over to him temporarily and was to be returned at his uncle's request. This receipt appears to have been purely the idea of Rollie D. Rose. It was not directed or approved by Cleveland L. Rose, and we find no indication on the part of the donor to indicate any other intention than that which he expressed in plain language. He had evidently expressed a different intention in his will, which had been executed some time prior to his death, but he had a perfect right to change his mind after the execution of his will, just as one has the right to change his will as often as he desires.

After Rollie D. Rose had consulted the firm of Hatcher & Hatcher, attorneys, relative to his uncle's sale of his property for a consideration much below its alleged value, he requested that Ben Hatcher go with him and talk to Cleveland L. Rose. They did this a short time before his death, and both testified that Cleveland L. Rose advised them firmly that he wanted no action taken relative to canceling or setting aside the conveyance of his property, and that he knew what he was doing and what he wanted. Both Rollie D. Rose and Ben Hatcher testified that after this conversation, the idea of a guardianship for Cleveland L. Rose and an action to set aside the sale of his property was completely abandoned. It was then that Cleveland L. Rose advised Rollie D. Rose to turn over the money that he had given him to Ben Hatcher, for Harry Rose. In the county court proceedings, Mr. Hatcher testified that Rollie D. Rose turned the money over to him because he was afraid that he might lose it. However, in the trial in the district court, he testified definitely that Cleveland L. Rose had instructed Rollie Rose to turn the money over to him (Hatcher) for Harry Rose. It is not disputed that Mr. Hatcher had been the attorney for Harry Rose for many years and had attended to a number of legal matters for him, and that this fact was known to Rollie D. Rose and perhaps to Cleveland L. Rose.

Much of the testimony bearing upon the intention of the donor to make a gift may be properly considered to prove that Cleveland L. Rose made a complete delivery of the $3,500 before his death. He never uttered a single word that might be construed as a reservation of any dominion or control over the money so delivered. He apparently had his mind made up definitely, as shown by his own words, and further by the fact that after delivering the money to Rollie D. Rose he never made any request or indicated in any manner that he had changed his mind or might change his definitely-expressed intention of giving the money to Harry Rose.

The common-law rule governing gifts inter vivos has been aptly and clearly stated by this court in a number of decisions. One of the earlier cases upon this point is Fouts v. Nance, 55 Okla. 266, 155 P. 610. The rule relative to the evidence required to prove such a gift and its delivery is expressed in the first and second syllabus as follows:

"After the death of an alleged donor, in order to establish a gift inter vivos, the evidence must be clear, explicit, and convincing in support of every element necessary to constitute a valid gift.

"A 'gift inter vivos' is complete where there is an intention to give, accompanied by a delivery of the thing given, and an acceptance by the donee."

In Sands v. Dildine, 175 Okla. 520, 54 P. 2d 171, in speaking of a gift inter vivos, it is said:

"It is not essential that delivery be made to the donee himself, but may be made to another for the donee, or to his agent. But delivery to the donor's agent is never sufficient, as it is essentially no delivery at all. It is as if the donor had merely shifted possession of the property from one pocket to another. The courts all seem to be in accord as to the principle itself, but the trouble arises on the question

whether the person to whom the property is delivered is the agent of the donor or a trustee for the donee. The determination of this fact rests on the intention of the donor, the situation and relationship of the parties, the kind and character of the property, and the things said, written, or done in regard thereto." Citing Sauls v. Whitman, 171 Okla. 113, 42 P. 2d 275.

See, also, 38 C.J.S., Gifts, Sec. 25.

We think that the delivery of this $3,500 both to Rollie D. Rose and to the attorney, Hatcher, was for the use and benefit of Harry Rose, and they were his agent, attorney, and/or trustee, as Cleveland L. Rose had relinquished all dominion and control over the money and did not regard these men as his own agents.

In regard to the acceptance of the gift by Harry Rose, it should be remembered that Harry Rose was not available and had not returned to Oklahoma City before the death of the donor, and so far as the record shows he knew nothing of the gift from his brother until he returned here after his brother's death. Under such circumstances we think it clear that the acceptance of the gift by Harry Rose should be presumed. In Warner v. Keiser, 93 Ind. App. 547, 177 N.E. 369, it is said:

"There must be a delivery of the gift to the donee, which is so complete in character as to divest the donor of any further dominion, control or title in the subject of the gift. . . . The delivery need not be made to the donee personally, but may be made to another as his trustee for his benefit, and such a delivery is as effectual as though made direct to the donee . . . . This court has also held 'that it should be the object of the court not to defeat, but rather to carry into effect, the intention of the intestate if it can find itself able to do so without violation of some controlling principle of law.' "

See, also, 38 C.J.S., Gifts, §65, subs. (d).

When Ben N. Hatcher accepted the proposed gift from Rollie D. Rose, he testified that he did so as the agent or attorney of Harry Rose, and not as the subagent of Rollie D. Rose. If Ben N. Hatcher was acting for Harry Rose, either as his agent, attorney, or trustee, then delivery to the donee was complete before the death of the donor. Mr. Hatcher refused to deliver the money to anyone except Harry Rose. He went to the bank and placed the money in the form of a cashier's check payable to himself, but upon the return of Harry Rose he endorsed the check to him. We conclude that delivery of the gift was complete when Cleveland L. Rose directed his nephew, Rollie D. Rose, to deliver the money to Ben N. Hatcher for delivery to his client, Harry Rose, and that acceptance by Harry Rose, under the circumstances existing at the time, must be presumed.

Five witnesses testified that Cleveland L. Rose expressed his desire and intention to give the money here involved to his brother, Harry Rose. We do not find a single witness who testified directly that he had any other desire or intention.

This was a law action, and since there was sufficient evidence to sustain the judgment of the trial court, said judgment will be affirmed.

WELCH, CORN, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.