2004 OK CIV APP 86

**Patricia Bowers EDWARDS, Individually and as Natural Mother and Next Friend of Robert Drew Bowers, an incapacitated person, Plaintiff/Appellee/Cross–Appellee,**

v.

**Rex URICE, an individual; Eloise Cooper Bowers, an individual and Co–Guardian of Robert Drew Bowers; the Robert S. Bowers and Eloise C. Bowers Foundation, a private foundation; and Bancfirst, a national banking association, Defendants/Appellants,**

**Lloyd G. McAlister, Guardian Ad Litem for Robert Drew Bowers, Appellee/Cross–Appellant.**

No. 100,031.

Court of Civil Appeals of Oklahoma, Division No. 1.

May 28, 2004.

Certiorari Denied Sept. 20, 2004.

Babette Patton, Oklahoma City, OK, for Plaintiff/Appellee/Cross–Appellee.

Terry W. Tippens, Kevin R. Donelson, Oklahoma City, OK, for Defendants/Appellants.

Lloyd G. McAlister, Edmond, OK, for Appellee/Cross–Appellant.

## OPINION

CARL B. JONES, Judge.

¶ 1 This case involves a purported exercise of a power of appointment granted to Eloise Cooper Bowers (Bowers) by her mother, Eloise Powers Cooper, in the Eloise Powers Cooper Revocable Trust Agreement (Cooper Trust). The Cooper Trust gave Bowers, a current income beneficiary of the Cooper Trust, a limited power to appoint Trust A of the Cooper Trust to or for the benefit of Bowers' grandson, Robert Drew Bowers, an incapacitated person (Drew). In the event Bowers failed to exercise the power of appointment, Trust A would be held for the benefit of Plaintiff/Appellee/Cross–Appellee, Patricia Bowers Edwards, Bowers' daughter and the natural mother of Drew (Edwards). Edwards filed a motion for partial summary judgment claiming that Bowers' exercise of the power of appointment was invalid and ineffective to appoint Drew as beneficiary of Trust A of the Cooper Trust. The trial court agreed. In reversing that order, we hold Bowers effectively exercised the power of appointment.

¶ 2 The pertinent facts are undisputed. In 1968, Eloise Powers Cooper created the Cooper Trust. Upon Eloise Powers Cooper's death, the trust estate of the Cooper Trust was divided into two separate trusts: Trust A and Trust B. Only Trust A is at issue here. Bowers was named as the current income beneficiary of Trust A. In addition, the Coo-

per Trust granted Bowers a special power of appointment. Specifically, Article 4.3 of the Cooper Trust provided:

A current income beneficiary shall have the power, either by will at his death or during his lifetime after having reached the age of thirty (30) years by written instrument signed by such current income beneficiary and delivered to the Trustees during such beneficiary's lifetime, to direct Trustees to pay and distribute or to continue to hold in trust all or any part of the trust estate or estates with respect to which he is at the time a "current income beneficiary" to or for the benefit of (i) Drew . . . . as such current income beneficiary may direct, provided that in exercising such special power, specific reference is made in the will or written instrument to the power of appointment and purports to exercise such power.

¶ 3 The Cooper Trust specified upon Bowers' death that if Bowers failed to effectively exercise the power of appointment, Edwards would become the successor current income beneficiary of Trust A.

¶ 4 In January, 2000, Bowers executed and created a Third Amended and Restated Trust Agreement (Bowers Trust). Article 7.11 of the Bowers Trust provided:

*Powers of Appointment.* Pursuant to the terms of that certain Eloise Powers Cooper Revocable Trust Agreement, dated March 13, 1968, entered into by and between Eloise Powers Cooper, as Settlor, and the then First National Bank and Trust Company of Oklahoma City, as Trustee, the Settlor is the current income beneficiary of said Trust and, in accordance with the provisions of Article 4.3 of said Trust, has a limited power of appointment with regard to the assets of Trust A which is a part of said Trust. Accordingly, in the event that the Settlor's daughter, Patricia Bowers Edwards, shall in any way contest, (i) the provision of this Trust, (ii) the provisions of any other trust established by the Settlor and/or her late husband, Robert S. Bowers, (iii) the establishment or funding of the Robert S. and Eloise C. Bowers Foundation or the appointment of any trustee thereof, or (iv)

should the Settlor's daughter contest the appointment of John R. Duty or any other person to serve as guardian or co-guardian of her son, Robert Drew Bowers, the Settlor shall be deemed to have specifically and intentionally exercised said limited power of appointment, as contemplated by said Article 4.3, in favor of her grandson, Robert Drew Bowers, also known as Drew Cunningham, with the intention that the interest of the Settlor's daughter in the Eloise Powers Cooper Trust shall terminate.

¶ 5 The parties do not controvert that a copy of the Bowers Trust was delivered to the trustee of the Cooper Trust during Bowers' lifetime.

¶ 6 On July 12, 2000, Edwards filed an action in the District Court of Oklahoma County, Case No. CJ–2000–5046, challenging the acts of the trustees of certain trusts created by Robert S. Bowers, deceased. In addition, on August 17, 2001, Edwards filed the instant action to dissolve the Robert S. Bowers and Eloise C. Bowers Foundation, a private foundation (Bowers Foundation) and to remove BancFirst, a national banking association, as Trustee of the Bowers Trust for breach of fiduciary duty. Thus, it is uncontroverted one or more of the conditions precedent described in Article 7.11 of the Bowers Trust were satisfied.

¶ 7 Bowers died on October 21, 2001. On November 19, 2001, Edwards dismissed with prejudice Bowers and her estate from the instant lawsuit. Upon Bowers' death, Drew was substituted as the income beneficiary of Trust A of the Cooper Trust and began receiving the income distributions formerly distributed to Bowers.

¶ 8 In May 2003, Edwards filed a motion for partial summary judgment which urged Bowers' exercise of the power of appointment was invalid and ineffective because: 1) The purported exercise was not operative until Bowers' death; and therefore was a testamentary disposition that had to be exercised by will; 2) The purported exercise was not a valid *inter vivos* transfer because there were no income distributions to Drew prior to Bowers' death; and 3) the assets of the

Cooper Trust were never transferred to the Bowers Trust; therefore, any attempt to dispose of those assets through the Bowers Trust was ineffective.

¶ 9 In response, Defendants/Appellants, Rex Urice, the lifetime trustee of the Bowers Foundation, and BancFirst, as trustee of the Bowers Trust (Appellants), denied certain allegedly disputed facts and contended Edwards' arguments are without merit. Appellants also filed a cross-motion for partial summary judgment urging Bowers' exercise of the power of appointment complied with the requirements for the exercise imposed by the donor and Oklahoma law; and the occurrence of the conditions precedent specified in Article 7.11 automatically triggered the exercise of the power of appointment thereby appointing Drew as the beneficiary of Trust A of the Cooper Trust. Cross–Appellant, Lloyd D. McAlister, guardian ad litem for Drew (McAlister) filed a separate cross-motion for summary judgment urging that, as a matter of law, Bowers effectively exercised her special power of appointment in favor of Drew.

¶ 10 After a hearing on the motions, the trial court sustained Edwards' motion and denied Appellants' and McAlister's cross-motion for partial summary judgment. Appellants and McAlister appealed. This matter stands submitted without appellate briefs on the trial court record. *See* Rule 13, *Rules for District Courts,* 12 O.S.2001, Ch. 2, App. 1, and Rule 1.36, *Oklahoma Supreme Court Rules,* 12 O.S.2001, Ch. 15, App.

¶ 11 This Court's standard of review of a trial court's grant of summary judgment is *de novo. Hoyt v. Paul R. Miller, M.D., Inc.,* 1996 OK 80, ¶ 2, 921 P.2d 350, 351–52. Where the facts are not disputed an appeal presents only a question of law. *Gladstone v. Bartlesville Independent School Dist. No. 30 (I 30),* 2003 OK 30, ¶ 5, 66 P.3d 442, 446. This Court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rulings. *Id.*

¶ 12 Title 60 O.S.2001 § 299.1 *et seq.* is the controlling statutory authority concerning powers of appointment. Section 299.1 provides "the common law of powers is hereby declared to be the law in this state, except as modified by statute." Thus, to the extent there is no statutory authority or case law to the contrary, we adopt the national common law norms found in the RESTATEMENT (SECOND) OF PROPERTY: DONATIVE TRANSFERS (1986) (hereinafter "RESTATEMENT").

¶ 13 A power of appointment is created when one person (the donor) grants to another person (the donee) authority to designate recipients (objects) of beneficial interests in the donor's property. RESTATEMENT § 11.1, § 11.2; *see also Estate of Sieber v. Oklahoma Tax Com'n,* 2002 OK CIV APP 25, ¶ 22, 41 P.3d 1038, 1043. A power of appointment is either general or non-general. RESTATEMENT § 11.4; *see also Estate of Sieber* at ¶ 35, 41 P.3d at 1045. A general power of appointment is a power of appointment which is exercisable in favor of the donee, the donee's creditors, estate or the creditors of the donee's estate. *Id.* If a power is not general, it is a non-general power or special power. *Id.* Because Bowers could only exercise the power of appointment in favor of particular persons or class of persons, it was a non-general (specific) power of appointment. A power of appointment is either presently exercisable or not presently exercisable. RESTATEMENT § 11.5. A power exercisable by will is obviously not a presently exercisable power of appointment. *Id.* A power is presently exercisable "if the donee at the time in question by an exercise of the power can create an interest, present or future, in an object of the power." *Id.*

¶ 14 Appellants and McAlister raise several allegations of error in their petitions-in-error. However, the primary issue before the trial court, and on appeal, is whether Bowers' purported exercise of the power of appointment in her revocable trust was an *effective inter vivos* exercise of the power of appointment even though the appointed property was not delivered to the object of the power until Bowers' death. We find that it was.

¶ 15 Pursuant to RESTATEMENT § 17.1, "[i]n order for a donee to exercise a power effectively it must be established—(1) That the donee intended to exercise it; and (2) That the expression of the intention complies

with the requirements of exercise imposed by the donor and by rules of law." The parties agree Bowers intended to exercise the power of appointment upon the occurrence of the prescribed conditions precedent. Therefore, the first element of § 17.1 was clearly established. Next, we consider whether the formal requisites for the appointment were satisfied when Bowers purportedly exercised the power of appointment in her revocable trust. "The formal requisites of an appointment are satisfied if the appointment complies with the formalities required by law for the transfer by the donee of owned property that is similar to the appointive property and with any additional formalities the donor specifies." RESTATEMENT § 18.2. Title 60 O.S.2001 § 299.3 provides:

A donee may exercise a power of appointment only by an instrument executed with sufficient formalities to pass title to the property covered by the power. When a power of appointment is exercisable only by will, a donee may not exercise it by deed. When a power of appointment is exercisable by deed, a donee may exercise it by will.

¶ 16 RESTATEMENT § 18.2, Comment (d) provides when a donor prescribes that the power be exercised "by deed," it is to be inferred as meaning:

[A]n instrument or act which would be formally sufficient under the applicable law to be legally operative in the donee's lifetime to transfer an interest to the appointee if the donee owned the appointive assets. *The exercise of a power of appointment by a revocable trust would be an exercise "by deed."* A power to revoke a revocable trust is effectively exercised by compliance with the formalities provided for in the trust instrument.

(Emphasis ours.) We deem an exercise by "written instrument" to be tantamount to an exercise "by deed" as those terms are defined above.

¶ 17 Here, the Bowers Trust was executed by Bowers, acknowledged and notarized and thus qualifies as a legally operative document with sufficient formalities to pass title to the property covered by the power. The Bowers Trust also complied with the

additional formalities specified by the donor, to wit: the power of appointment was exercised during Bowers' lifetime by a written instrument signed by Bowers; Article 7.11 of the Bowers Trust made specific reference to the power and purports to exercise the power upon the occurrence of certain conditions precedent; and, the Bowers Trust was delivered to the trustee of the Cooper Trust. Therefore, we find Bowers effectively exercised the power of appointment with a written instrument during her lifetime.

¶ 18 We now specifically address Edwards' summary judgment arguments which persuaded the trial court to rule in her favor. Edwards argued the Bowers Trust was not the appropriate vehicle to exercise the power of appointment because the assets of the Cooper Trust had to be transferred to the Bowers Trust before the exercise of the power of appointment in the Bowers Trust could be effective. This argument has no merit. The exercise of the power does not transfer property from the donee to the appointee, in this case from Bowers to Drew, but rather from the donor, Eloise Powers Cooper, to the appointee. The donee, in this case Bowers, is only a conduit. 62 AM.JUR. 2d *Powers of Appointment and Alienation* § 79. "The appointment is said to 'relate back' to the time of the creation of the power and to operate as if it had been originally contained in [the Cooper Trust]." RESTATEMENT (Introductory Note). Therefore, at no time was it necessary for the assets of the Cooper Trust to be a part of the Bowers Trust for the exercise of the power of appointment in the Bowers Trust to be effective.

¶ 19 Edwards also contended, and apparently the trial court agreed, under the law of *inter vivos* transfers, a "delivery" of the appointed property to Drew had to occur before the power of appointment was *effective*. Edwards urged because there were no income distributions to Drew prior to Bowers' death, Bowers' purported *inter vivos* exercise of the power of appointment was actually *testamentary* in character and thus ineffective because it was not executed with the formalities required for the execution of a will. In essence, Edwards argued the inter-

est in the appointed property had to be transferred or become distributable *immediately,* or, at the minimum, *prior to Bowers' death,* to be a valid and effective *inter vivos* exercise of the power of appointment. We reject this contention.

¶ 20 A donee may exercise a power of appointment by *inter vivos* instrument with the intent that such exercise become presently and immediately effective by the transfer of an interest in the appointed property. However, Bowers exercised her presently exercisable power, by the execution of an *inter vivos* instrument, to appoint an interest which was intended to be effective or operative at some time in the future (when the conditions precedent occurred.) As we have previously stated, a present exercise of a power to create an interest in the future is permissible under RESTATEMENT § 11.5. In addition, independent research reveals no legal prohibition against such future interest ripening upon the occurrence of specified conditions precedent (*i.e.* the no-contest conditions) or upon the donee's death. Therefore, even though Drew's interest in the appointed property was not transferred until Bowers' death, this does not vitiate Bower's valid and effective lifetime exercise of the power of appointment. Accordingly, we find Bowers' lifetime exercise of the special power of appointment which was intended to be effective or operative at some time in the future was valid.

¶ 21 As an aside, we note Article 7.11 of the Bowers Trust does not delay the transfer date of the appointed assets until Bowers' death. Thus, although not in issue here, Drew may have reason to question whether his interest in Trust A of the Cooper Trust should have been transferred or become distributable to him upon the occurrence of the conditions precedent. Yet, it may have been appropriate to delay the transfer or distribution of the appointed assets until the Bowers Trust became irrevocable (*i.e.* upon Bowers' incapacity or death) because Bowers expressly reserved the right to revoke or amend the exercise of the power of appointment by exercising same in her revocable trust agreement. Notwithstanding such observations, we reiterate the delay or timeliness of Drew's substitution as beneficiary of Trust A had no impact upon the effectiveness of Bowers' lifetime exercise of the power of appointment.

¶ 22 Edwards also argued the purported exercise was not a valid *inter vivos transfer* because Bowers lacked the donative intent to "gift" the appointed assets. In support of this contention, Edwards cited *In re Estate of Estes,* 1999 OK 59, 983 P.2d 438, wherein the Supreme Court explained that to establish an *inter vivos* gift, there must be "delivery by the donor and acceptance by the donee" and "the gift must be gratuitous and irrevocable and go into immediate and absolute effect with the donor relinquishing all control." *Id.* at ¶ 29, 983 P.2d at 445. Edwards urged Bowers lacked donative intent because she retained "dominion and control" over the assets of the Cooper Trust (i.e. Drew was not substituted as beneficiary of Trust A) until her death. However, *Estes* and other similar cases are inapplicable. The issue in the instant case is whether the donee executed a written instrument during her lifetime which effectively exercised the power of appointment, not whether there was an actual transfer of the appointed assets during the donee's lifetime. Thus, it is irrelevant that Bowers exercised dominion and control of the assets of Trust A during her lifetime. The language at Article 7.11 of the Bowers Trust was a valid and effective exercise of the power of appointment during Bowers' lifetime which ripened after one or more of the conditions precedent were satisfied.

¶ 23 After *de novo* review of the record, we conclude Bowers effectively exercised the power of appointment granted to her by the Cooper Trust during her lifetime. Based on the foregoing, we reverse and remand this matter to the trial court for further proceedings consistent with this opinion.

¶ 24 REVERSED AND REMANDED.

BUETTNER, V.C.J./P.J. and ADAMS, J., concur.