Jeffrey T. JONES, Respondent,

v.

**OKLAHOMA NATURAL GAS COMPANY, a trade name for Oneok, Inc., Petitioner.**

No. 80574.

Supreme Court of Oklahoma.

July 12, 1994.

Jack S. Dawson, Kelly A. George, and Jami J. Campisano, Miller, Dollarhide, Dawson & Shaw, Oklahoma City, for respondent.

D. Lynn Babb, G. Calvin Sharpe, Pierce, Couch, Hendrickson, Johnston & Baysinger, Oklahoma City, for petitioner.

WATT, Justice.

To decide this certified interlocutory appeal we must interpret the terms of the Underground Facilities Damage Prevention Act, 63 O.S.1981 §§ 142.1, et seq., and their application, to the facts of this appeal. This appeal arises from a personal injury suit

brought by Jeffrey T. Jones against Oklahoma Natural Gas Company. Jones contends that ONG negligently mismarked the location of an underground natural gas pipeline, and caused him to be hurt when the pipeline exploded and burned when Jones struck it with a power auger. Jones also contends that the legislature passed the Act solely to protect underground facilities and does not apply to personal injuries that result from the Act's violation. ONG claims that Jones and Robinson violated the Act by failing to notify ONG of their intent to dig post holes for a fence. Thus, says ONG, it was deprived of a second opportunity to mark the location of the gas line. ONG concludes that it is entitled to judgment in its favor as a matter of law.

## THE ACT

The Underground Facilities Damage Prevention Act, 63 O.S.1981 §§ 142.1, et seq., requires excavators, before starting to dig with powered or mechanized equipment, to notify operators of "underground facilities" of their intentions. The term "underground facilities," includes telephone, electrical, gas, sewer, water, and other lines. "Excavate," means to dig "... in or on the ground by use of mechanized equipment ... including ... auguring, ... [or] trenching...." 63 O.S. 1981 §§ 142.2.15 and 142.2.5.

An excavator must notify the operators of all underground facilities before beginning to excavate a "private easement, or on or near the location [of underground facilities]." Id., § 142.5. The operator of underground facilities is then required to indicate the approximate location of its line by marking a four-feet wide path, the outer edges of which are two-feet on either side of its facility.

Operators may establish notification centers, so that an excavator may satisfy the notice provisions of the Act with one call. Id. § 142.10. This procedure is called the "One Call System."

## FACTS

The parties stipulated to the relevant facts. Robinson Construction Company was in the home building business. Robinson owned a lot in Edmond, Oklahoma, upon which he was building a house for a third party. Robinson had contracted with Marty Grooms for Grooms to install a sprinkler system on Robinson's Edmond lot. On June 18, 1990, before installing the sprinkler system, Grooms gave notice to a notification center, in which ONG was a participant under the One Call System. As required by the Act, Grooms requested that ONG, and other utilities who participated in the One Call System center, detect the approximate location of ONG's facilities where they underlay Robinson's lot. Later that day, an ONG employee flagged and painted lines two-feet on either side of the line that the ONG employee had marked as the location of ONG's gas line, where it underlay Robinson's lot. Later events, however, showed that the ONG employee mismarked the approximate location of the line to the extent that the line was not within the four-feet wide area. The ONG employee showed that he recognized he might have mismarked the line by entering in his log the notation "bad locate," but neither he nor any other ONG employee informed Grooms of this fact. Grooms installed the sprinkler system without incident.

Grooms installed the sprinkler system on a subcontract from Robinson Construction. Grooms, however, did not say so in his One Call System notice. Nor did Grooms mention that Robinson would be installing a fence after Grooms completed installing the sprinkler system. In his One Call System notice, Grooms stated that the "Nature of Work" was "Installing sprinkler system full yard." Grooms added that the work would be of two days duration, commencing June 19, 1990. Grooms' notice also said that the work was being done for "Resident."

On June 28, 1990, ten days after Grooms gave his One Call System notice, Jones, who was Robinson's only employee, and its superintendent of construction, went to the Edmond lot with his employer, Chuck Robinson, to install a fence. Jones knew that Grooms had given a One Call System notice to ONG, and saw ONG's markings ostensibly showing the approximate location of the gas line. Jones used a gasoline powered auger to dig the fence post holes. As Jones was digging a

post hole, his auger struck ONG's line, which resulted in the explosion and fire that injured Jones. The parties stipulate that Jones dug no closer than thirty inches to the centerline of the area that ONG's employee had marked with flags and paint as the approximate location of the gas line. Thus, they agree that Jones never dug within the four-feet wide area marked by ONG's employee as the approximate location of the gas line.

## THE CERTIFIED QUESTIONS

The trial court certified two issues for interlocutory appeal under 12 O.S.1991 § 952(b)3:

1. Whether Jones is in the class intended to be protected by the Act.

2. What is the meaning of the term "approximate location," as used in the Act?

The trial court also held that the Act is not applicable here, "because it was enacted for the sole purpose of protecting underground facilities."

## DISCUSSION

### I.

#### The Act Applies to This Action

■ Jones urges us to hold that the Act does not apply to his cause of action against ONG. We have carefully reviewed the Act, and find nothing in its terms to support a holding that it was passed solely to prevent damage to underground facilities. The title of the Act says that it is "An Act relating to public health and safety." Section 142.9.C of the Act requires an excavator to keep sources of ignition away from a damaged facility, if such damage "endangers life, health or property." Clearly, the legislature intended that the Act apply both to personal injuries caused by damage to underground facilities, and to actions to recover damages for injury to the facilities themselves. Had the legislature intended a narrower application of the Act we believe it would have said so.

#### Jones Was an "Excavator," as that Term is Used in the Act

■ Jones contends that he was not an "excavator," because § 142.2.5(i) of the Act excludes from that definition "any individual excavating on his own property ..." We reject this contention because the Act limits the exclusion from the definition of the word "excavator" to one who *"is not in the excavating business for hire."* § 142.2.5(i). [Emphasis added.] Clearly, Robinson Construction Company, a building contractor who was Jones' employer, *was* in the excavation business. Thus, Robinson fell within the Act's definition of "excavator."

#### Jones's Violation of the Act Does Not Entitle ONG to Judgment in Its Favor As a Matter of Law

■ ONG contends that Jones's failure to give a One Call System notice for ONG to mark the location of the line entitles it to summary judgment in its favor. We disagree because we believe that the extent, if any, to which Jones's violation of the Act contributed to his injuries is a matter to be considered by a jury.

In support of its claimed right to summary judgment, ONG relies on *Bond v. Oklahoma Natural Gas*, 849 P.2d 1100 (Okla.App.1993). In *Bond,* the Court of Appeals correctly held that ONG was entitled to summary judgment in a suit by a road grader operator who was injured by an explosion that occurred when his grader struck an ONG gas line. *Bond,* however, is readily distinguishable from the case at bar. In *Bond,* no one had notified ONG that work would be going on near ONG's line. Here, however, an ONG employee had *previously mismarked* the approximate location of its line, reported to ONG that he might have made a mistake, but ONG informed no one of its employee's possible error. Jones did his work outside the area marked by ONG's employee. In addition, there is evidence in the record before us that could support a finding by the jury that a new One Call System notice from Jones or Robinson would not have caused ONG to change the location of its marks. By contrast, in *Bond,* there was no evidence that

would have supported a finding of negligence against ONG.

Had Grooms, Robinson's sprinkler system subcontractor, provided Robinson's name and said that a fence was to be installed on the property besides the sprinkler system, the original One Call System notice would have covered Jones's fence excavation. ONG may not use the happenstance of Grooms's failure to mention Robinson's intention to install a fence to avoid having a jury consider whether ONG's mismarking the location of its line negligently caused or contributed to Jones's injuries.

### Both ONG and Jones Violated the Act

■ Section 142.6.B of the Act required ONG to "locate and mark or otherwise provide the approximate location of the underground facilities ... in such a manner as· to enable the excavator to employ hand-dug test holes to determine the precise location of the underground facilities in advance of excavation.... For the purpose of this act, the approximate location of the underground facilities shall be defined as a strip of land two (2) feet on either side of such underground facilities." ONG contends that it cannot be held liable for its failure to accurately mark the location of its line in the first instance, because Jones had an obligation to actually locate the line by digging manually before starting to work with a power auger. The language of the Act does not support ONG's contention, because § 142.7.A of the Act requires the excavator to determine the "precise location" of underground facilities only when he intends to excavate "directly over marked routes of underground facilities." [1] The record shows that Jones was digging outside the four-feet wide strip marked by ONG when the explosion occurred. Thus, Jones had *no* obligation to precisely locate ONG's line because he was not digging "directly over" the route marked by ONG. The Act unambiguously requires an operator of

underground facilities to designate the "approximate location" of its facilities with sufficient accuracy to allow others to assume that the facilities are somewhere within the four-feet wide strip the operator marked. Only when an excavator finds it necessary to dig within the four-feet wide strip is it required to precisely locate the facility by hand digging.

■ Section 142.6.D of the Act expressly requires that notices include the names and address of the excavator, the type and extent of the proposed excavation, and the date and time when work is to begin. Grooms's One Call System notice listed only *his* sprinkler system work, not the fence work that Jones was to do for Robinson. Thus, Jones and Robinson could not rely on the One Call System notice that Grooms had given. Had Grooms said in his One Call System notice that Robinson would be installing a fence after Grooms completed his work, however, Jones and Robinson would have been relieved of any obligation to give a second One Call System notice. Whether and to what extent Jones's violation of the Act caused or contributed to Jones's injuries addresses the issue of Jones's contributory negligence, and must be left to the jury. "The defense of contributory negligence ... shall, in all cases whatsoever, be a question of fact, and shall at all times be left to the jury." Okla. Const. Art. 23 § 6.

### II.

### *The Act Does Not Deprive Jones of His Common Law Negligence Cause of Action Against ONG*

■ ONG contends that Jones's violation of the Act prohibits Jones from pursuing Jones's common law cause of action against ONG for ONG's negligence in mismarking its gas line. Before a statutory scheme may be construed to abrogate common law rights, "... its alteration must be clearly and plainly

---

1. Section 142.7.A reads, in material part, as follows:

   ... powered or mechanized equipment *shall not be used directly over marked routes of underground* facilities until the precise location of the underground facilities has been determined by the excavator ... If the precise location of the

underground facilities cannot be determined by the excavator, the operator thereof shall be notified by the excavator so that the operator can determine the precise location of the underground facilities prior to continuing excavation or demolition. [Emphasis added.]

expressed. An intent to change the common law will not be presumed from an ambiguous, doubtful or inconclusive text." *Tate v. Browning–Ferris, Inc.,* 833 P.2d 1218, 1225 (Okla.1992). The Act imposes obligations on operators of underground facilities, and excavators. It does not, however, provide remedies for anyone damaged because of a violation of the Act. Only where *remedies* are provided in a statutory enactment will we hold that the statutory scheme supplants common law rights. See, for example, *Wagoner v. Bennett,* 814 P.2d 476, 479 (Okla. 1991). There, we held that the Oklahoma Residential Landlord and Tenant Act, 41 O.S. 1991 §§ 101–136, superseded common law rights *because the act expressly applied to and regulated* "rights, obligations *and remedies* under a rental agreement." [Emphasis added.] Here, as noted, the Act does not deal with remedies at all.

■ The Act sets standards dealing with the operation, maintenance, or repair of property in much the same way as the Rules of the Road in the Oklahoma Motor Vehicle Code, 47 O.S.1991, § 11–101, set standards relating to the operation of motor vehicles. Municipal building codes perform the same purpose. A violation of the Act *may,* therefore, be negligence per se, but only if the violation proximately caused or contributed to the damages at issue. *Smith v. Cox,* 301 P.2d 649, 650–51 (Okla.1956); *Boyles v. Oklahoma Natural Gas Company,* 619 P.2d 613, 618 (Okla.1980). The determination of what casual connection, if any, existed between either ONG's or Jones's violations of the Act, and whether those violations were negligence per se, is for the jury.

The trial court is instructed to submit the issues of ONG's negligence, and Jones's contributory negligence, including the effect of having violated the terms of the Act, to the jury under appropriate instructions.

CERTIFIED INTERLOCUTORY ORDER VACATED. MATTER REMANDED WITH INSTRUCTIONS FOR FURTHER PROCEEDINGS.

LAVENDER, V.C.J., and ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

HODGES, C.J., and OPALA, J., concur in part, dissent in part.

SIMMS and HARGRAVE, JJ., dissent.

SIMMS, Justice, dissenting:

I would not grant certiorari to review this interlocutory order. In doing so, the Court is merely issuing a declaratory judgment and allowing the parties to contravene the proscription of Rule 1.50 of the Rules of Appellate Procedure, 12 O.S.1991, Ch. 15, App. 2, against bringing an interlocutory appeal from denial of a motion for summary judgment.