2001 OK CIV APP 49

**In the Matter of the ALLEN A. ATWOOD TRUST Dated November 8, 1962.**

**Bank of Oklahoma, N.A., Plaintiff,**

**v.**

**Allen A. Atwood III and Peter M. Atwood, Defendants/Appellants,**

**and**

**Roger M. Atwood, Defendant/Appellee.**

**No. 94,394.**

Court of Civil Appeals of Oklahoma, Division No. 4.

April 3, 2001.

---

James C. Hodges, Eller & Detrich, Tulsa, OK, for Appellants.

Jeffrey D. Hassell, Gable & Gotwals, Tulsa, OK, for Appellee.

RAPP, Acting Presiding Judge:

¶ 1 The trial court defendants, Allen A. Atwood III and Peter M. Atwood (Nephews), in this declaratory judgment action brought by Bank of Oklahoma, N.A. (BOK) as Trustee of the Allen A. Atwood Trust dated November 8, 1962, (Trust), appeal the trial court's grant of summary judgment in favor of the third trial court defendant, Roger Atwood (Uncle) and denied Nephews' motion for summary judgment. This is reviewed under Part I.

¶ 2 Nephews have filed a supplemental appeal challenging the trial court's award of attorney fees to Uncle, which award was made subsequent to the summary judgment. This is reviewed under Part II.

## PART I

### BACKGROUND

¶ 3 The facts are not in dispute. This case dealt with the interpretation of a trust instrument and a will together with a determination of whether the law of Oklahoma or the law of Virginia applies in the interpretation of either document.

¶ 4 Allen A. Atwood, Sr., as a resident of Minnesota, executed the Trust on November 8, 1962. Although the Trust was originally executed in Minnesota, the Trust has since removed to Oklahoma and BOK has become trustee.

¶ 5 Allen, Sr. had a wife, now deceased, and two sons, Allen A. Atwood, Jr., who is now deceased, and Uncle, the third trial

court defendant here. The sons were estranged from each other and apparently the alienation extended to the relationship between Uncle and Nephews.

¶ 6 The Trust plan established two trusts, Trust A and Trust B, but only Trust B is in issue here. The Trust provided that it would be divided into two shares upon the death of the Settlor's spouse—one share for Allen, Jr. (Trust B) and one share for Uncle (Trust A).

¶ 7 The Trust provisions governing Trust B stated that Allen, Jr. had a limited power of appointment in favor of his two children, the remaining trial court defendants, Nephews. Allen, Jr. had no other children. The language of the Trust provided that:

If ALLEN A. ATWOOD, JR., should die before receiving complete distribution of the trust held for his benefit, ALLEN A. ATWOOD, JR. shall have a limited power of appointment exercisable by him in his Last Will and Testament, and expressly referring to this power of appointment, to appoint one-half (½) the balance of the then remaining trust to a trust for the benefit of any one or more of his issue. . . .

The Trust further provided that the trustee was to distribute the balance of any portion of the Allen Jr. share of the Trust (Trust B) not "effectively disposed of by the above provisions" to the Uncle's share of the Trust (Trust A).

¶ 8 On June 28, 1988, Allen, Jr. executed his Last Will. At that time, and at the time of his death, he was a resident of Virginia. The Will was probated in Virginia. The Will bequeathed certain personal items to his wife and, if she did not survive him, all of his tangible personal property was bequeathed in equal shares to his sons. The appointment of the executor references the law of Virginia as a basis for the powers exercisable by the executor.

¶ 9 The parties agree that Allen, Jr. knew about the Trust when he executed his Will. He had signed a Family Agreement dated October 27, 1978, concerning the transfer of the Trust from Minnesota to Oklahoma.

This Agreement outlines the Trust provisions and contains a paragraph specifically mentioning the power of appointment. In addition, in the Agreement, Allen, Jr. renounced his power of appointment to the extent that he received assets from Trust B by distribution under that Agreement.[1] However, the paragraph does not mention the reference requirement contained in the grant of the power of appointment.

¶ 10 The Will makes no mention of the Trust or the power of appointment. However, the Will did include residuary clauses as follows:

THIRD: All the rest, residue and remainder of my property, real and personal, wherever situate and however held, herein referred to as my Residuary Estate, I give, devise and bequeath, absolutely, to my wife NICOLETTE F. ATWOOD, if she survives me.

FOURTH: In the event that my wife does not survive me, I give, devise and bequeath my Residuary Estate to my sons, ALLEN A. ATWOOD III and PETER MILLER ATWOOD, share and share alike, and in the event either of my sons predecease me with issue surviving, their share shall pass to their issue, per stirpes.

¶ 11 The Uncle moved for summary judgment and maintained that the law of Virginia governed interpretation of the Allen, Jr. Last Will. As a consequence, the Last Will did not exercise the Trust's power of appointment because it failed to follow the Trust's directions and did not specifically refer to the appointment power. The Uncle also argued that Oklahoma law would reach the same result.

¶ 12 Nephews also moved for summary judgment. They acknowledge the absence of specific reference in the Last Will to the power of appointment in the Trust but argue that, under Oklahoma law, the residuary clauses suffice to exercise the power of appointment, and thus the Trust's reference requirement may be ignored.[2] Allen Jr.'s

---

1. The parties have not discussed the effect, if any, of this renouncement. Presumably, some assets remained in Trust B which could be the subject of an appointment.

2. An ancillary probate was filed in Oklahoma for the Allen Jr. Last Will. Nicolette Atwood filed an election to take against the Will. Nephews maintained that the result of the election was that the

Will contained no other provisions or statements referring to any power of appointment.

¶ 13 The trial court found that the documents were not ambiguous and that the Last Will did not exercise the power of appointment from the Trust. Summary judgment was granted to Uncle and denied to the Nephews.[3] The Nephews appeal.

## STANDARD OF REVIEW

¶ 14 The appellate standard of review in summary judgment is *de novo*. *Kirkpatrick v. Chrysler Corp.*, 1996 OK 136, ¶ 2, 920 P.2d 122, 124. Where the facts are not disputed an appeal presents only a question of law. *Baptist Building Corp. v. Barnes*, 1994 OK CIV APP 71, ¶ 5, 874 P.2d 68, 69. The appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100, n. 1. Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling. *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Keizor v. Sand Springs Ry. Co.*, 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328.

## ANALYSIS AND REVIEW

¶ 15 Here, Virginia law governs the interpretation of the Last Will of Allen Jr. because only personal property is involved. 84 O.S.1991, § 20. The Restatement (Second) of Conflict of Laws § 275 (1971) also points to the law of Virginia as controlling.

> Whether a power to appoint by will interests in movables is exercised by a general bequest not mentioning the power is determined by the law governing the construction of the donee's will (see § 264), unless the donor manifested a different intention.

Comments to that Section note that when a power provides that it shall not be exercised by a will which does not mention the power, then the power cannot be exercised by a silent will.

¶ 16 Moreover, under Virginia law, Allen, Jr. did not effectively exercise the power of appointment because his Will fails to refer to the power. The Virginia statute provides:

> Unless a contrary intention appears in the will, a residuary clause in a will or a will making general disposition of all the testator's property shall not exercise a power of appointment held by the testator.

Va.Code Ann. § 64.1–67.1 (1985).

¶ 17 In addition, Virginia's Court requires that the holder of the power of appointment must strictly comply with the terms and conditions expressed when the power was created. *Holzbach v. United Virginia Bank*, 216 Va. 482, 219 S.E.2d 868 (1975). In sum, under the law of Virginia, Allen Jr. did not exercise the power of appointment in his Last Will in accordance with the express language of the Trust.

¶ 18 The Nephews seek to avoid this outcome by arguing that the law of Oklahoma governs the interpretation of the Trust document and, under Oklahoma law, the conditions imposed upon the exercise of the appointment may be disregarded under 60 O.S. 1991, § 299.4. Based upon the language in this Section, Nephews conclude that the provision in the Trust requiring an express reference to the power of appointment in the Will may be disregarded. Section 299.4 provides:

> A power of appointment authorized to be *exercised* by an instrument which would not be sufficient to transfer title to the property covered by the power shall not be void, but its execution shall conform to the provisions of this act. When the power of appointment directs that formalities in addition to those prescribed in this act be

---

Will was effective only as to the Nephews and therefore the Residuary Clause pertaining to them took effect.

3. The result of the judgment was to construe the documents, which is what BOK asked for in its

petition for declaratory judgment. BOK did not seek summary judgment below and was content to have the disputing parties present the arguments so that it could properly distribute Allen Jr.'s share.

observed in the *execution* of the power, the direction may be disregarded.

(Emphasis added.)

¶ 19 The word "formality" was defined in Black's Law Dictionary, 7th Edition as:

Small points of practice that, though seemingly unimportant, must be observed to achieve a particular result.

The Fifth Edition of Black's included, "term generally refers to 'procedure' in contrast to 'substance'." The statutes use the word "formalities" in two other instances. The first, in Section 299.2, deals with the *execution* of an instrument which creates the power of appointment. The second, Section 299.3, relates to formalities of *execution* of the instrument purporting to *exercise* the power of appointment.

¶ 20 Clearly, the second sentence of Section 299.4 accomplishes the elimination of the need for any additional formality in the *execution* of the document creating the power of appointment. This construction is supported by the author of the Bill leading to the enactment of Section 299.4 and Professor Rarick. Joseph F. Rarick and Robert Henry, *The Oklahoma Powers of Appointment Act of 1977*, 32 Okla. L.Rev. 787, 796–97 (1979). There, the authors note that Section 299.4 deals with matters of execution and simply avoids pitfalls attendant to failure to follow the rules regarding execution of the applicable instrument. In summary, under this construction, Section 299.4 simplifies the requirements for *execution* of a document creating a power of appointment or a document exercising the power of appointment. Here, the Nephews do not assert that the Trust or the Will in any manner fail for improper execution.

¶ 21 This construction also coincides with prior Oklahoma law and the Restatement (First) of Property § 346 (1977). Pursuant to the Restatement, when exercising the power of appointment, the donee was required to observe the formalities imposed by law **and** by the donor for the *execution* of the instrument of appointment. However, as noted in the comments, some state statutes declared that a donor's demand for greater formalities in the execution of the instrument of appointment may be disregarded. Okla-

homa was one such state. 60 O.S.1971, §§ 229–230. Thus, current law as codified by Section 299.4, continues the previous law abrogating the need to conform to additional demands of formality in the *execution* of the appointment instrument that may be imposed by donor.

■ ¶ 22 However, cases have used the term "exercise of the power" interchangeably with "execution of the power." An example of the interchangeable use may be found in *In re Estate of Burgess,* 836 P.2d 1386, 1391 (Utah App.1992). Thus, the next question asks what effect, if any, does Section 299.4 have on the common law rule. The generally accepted common law rule is that a donor of a power of appointment may place limitations on the exercise of the power, such as were contained in Allen, Sr.'s Trust, and, when that occurs, the donee must comply with the limitations. *Clinton County Nat'l Bank & Trust Co. v. First Nat'l Bank of Cincinnati,* 62 Ohio St.2d 90, 403 N.E.2d 968 (1980); *First Nat'l Bank of McMinn County v. Walker,* 607 S.W.2d 469 (Tenn.1980); *Holzbach v. United Virginia Bank,* 216 Va. 482, 219 S.E.2d 868 (1975); *In re Estate of Smith,* 41 Colo.App. 366, 585 P.2d 319 (1978); *Lewis v. Tennille Banking Co.,* 230 Ga. 529, 198 S.E.2d 172 (1973); *Schwartz v. Baybank Merrimack Valley, N.A.,* 17 Mass.App.Ct. 169, 456 N.E.2d 1141 (1983); and *see* cases collected 16 A.L.R.3rd 951, 959–60; see *First Union Nat'l Bank v. Ingold,* 136 N.C.App. 262, 523 S.E.2d 725 (1999) (the court stated that it followed the minority rule whereby a residuary clause not mentioning a power of appointment exercised a general, unrestricted power of appointment.)

¶ 23 One reason for the rule is that the estate that is being appointed belongs to the donor (in the absence of a power coupled with an interest) and so the donor may impose conditions on the exercise of the power. *Schwartz v. Baybank Merrimack Valley, N.A.,* 17 Mass.App.Ct. 169, 456 N.E.2d 1141, 1144 (1983); *In re Estate of Schede,* 426 Pa. 93, 231 A.2d 135, 137 (1967); *In re Estate of Burgess,* 836 P.2d 1386, 1391 (Utah App. 1992). Other reasons for upholding the specific instructions of the donor are to avoid

unintended estate tax consequences; to avoid giving the property to the wrong persons; and, to insure the integrity of title. *Cross v. Cross*, 559 S.W.2d 196, 212 (Mo.Ct.App.1977), (WASSERSTROM, J. dissenting).

¶ 24 Therefore, if *"execution* of the power," as used in the second sentence of Section 299.4, can be interchanged with "exercise of the power" *and* the phrase also means that instructions as well as procedural formalities may be disregarded, then Section 299.4 is in derogation of the common law. In such case the statute is to be liberally construed with a view to effect its object and to promote justice. 25 O.S.1991, § 29. However, statutory alterations of the common law must be clearly and plainly expressed and an intent to effect a change will not be inferred from ambiguous or inclusive text. *Jones v. Oklahoma Natural Gas Co.*, 1994 OK 89, ¶ 17, 894 P.2d 415, 419–20.

¶ 25 This Court holds that the second sentence of Section 299.4 achieves the single function of dispensing with procedural formalities. There is not a clear intent in the statute's language to do anything other than to continue the rule of dispensing with excess formality in the execution of a document. However, Section 299.4 does not alter the rule that a donor may place limitations upon the scope and extent of the power, and that such limitations are controlling.[4]

¶ 26 This construction retains consistency between Section 299.4 and the rule, set forth in 84 O.S.1991, § 20, that Last Wills from other states are construed according to the laws of those states because to disregard the reference requirement in the Trust would also require that one disregard the Virginia law.

¶ 27 The Nephews lastly seek refuge in equity. They correctly note that the failure to find that Allen Jr. effectively exercised his appointment means that his estranged brother, rather than his children, receive the property. Their position is consistent with that of the Restatement (First) of Property § 347 (1977). There, the Restatement provides

that "[F]ailure of an appointment to satisfy formal requirement imposed by the donor does not cause the appointment to be ineffective . . . ." under certain conditions, one of which is that the appointment "approximates the manner of appointment prescribed by the donor." The other condition is that the beneficiary of the appointment be a spouse, child, charity, or creditor of the party exercising the power of appointment.

¶ 28 The comments and illustrations following this Section of the Restatement disclose that an "approximation" refers to formalities of execution as opposed to substantive limitations or conditions. The courts also have examined disposition language referring generally to a power, but not making specific reference to the power granted by the donor, in order to decide whether that constitutes an approximation. The results are mixed and turn upon whether the reviewing court decides that only the donor's intent controls or that the intention of both donor and donee are relevant.

¶ 29 An example of the former is *Holzbach v. United Virginia Bank*, 216 Va. 482, 219 S.E.2d 868 (1975). There the court ruled that the test is not whether donee intended to appoint but rather whether the donee manifested her intent in the manner prescribed by the donor. The case of *Cross v. Cross*, 559 S.W.2d 196 (Mo.Ct.App.1977), represents the other view. In *Cross* the court declined to follow *Holzbach* and determined that the intent of both donor and donee was relevant on the question of whether the power has been exercised. In *Cross*, unlike the case here under review, the residuary clause disposed of property "including all property over which I have a power of appointment, which I hereby exercise." The donor had provided that the power would not be effectively exercised "unless the Last Will and Testament of the person to whom such power is granted makes specific reference to the power and to this will." The court then ruled that the donee's language was a sufficient approximation of compliance.

---

4. *See Cross v. Cross*, 559 S.W.2d 196, 202 (Mo.Ct.App.1977) for a review of the distinction between limits on the scope and extent of the power and limits on the specific manner of exercise of the power.

¶ 30 Upon returning to the language of Allen, Jr.'s Last Will, this Court finds that no factual basis exists for application of the leniency in *Cross*. The language of Allen Jr.'s Last Will is unambiguous and, without dispute, wholly fails to refer to the power of appointment. Second, the law of Virginia precludes construction of this unambiguous language in a manner other than it failed to exercise the power, that is, that the language does not approach an "approximation" of the manner of appointment. Last, *Cross* also recognizes that substantive requirements and limitations are construed according to the intent of the donor, here Allen, Sr.

¶ 31 *Cross* would give effect to the intent of both the donor and donee. Prior Oklahoma law would limit the examination to the intent of the donor. 60 O.S.1971, § 231. Section 231 was repealed and no statute dealing with the same, specific subject matter was reenacted. In the absence of a legislative expression to the contrary, the common law rule will prevail. As discussed herein, the rule is that when a donor requires reference to the power of appointment in the instrument exercising that power, then the failure to provide that reference results in the power not being exercised.

¶ 32 Therefore, the trial court's summary judgment is affirmed.

## PART II

## BACKGROUND

¶ 33 Subsequent to the trial court's summary judgment, and while the appeal was pending, Trustee applied to the trial court for reimbursement from the Trust "B" share of the original Trust for his attorney fees, expenses, and certain expert witness fees. The Trust "B" share and whether Allen A. Atwood, Jr. exercised his power of appointment were the subject of this appeal.

¶ 34 Trustee submitted an application for fees and expenses and presented evidence in support of the rates charged and the reasonableness of the requested amounts. The Beneficiaries' principal contention is that Trustee is not legally entitled to recover the fees and expenses. The Beneficiaries challenged the reasonableness of the charges. However, the Beneficiaries did not object to fees being paid from Trust "A", which was the Trustee's share of the original Trust.

¶ 35 As a result of the trial court's ruling, which has now been affirmed by this Court, the Nephews no longer have an interest in Trust "B" due to the failure to exercise the appointment. It was undisputed that Trust "B" reverted to Uncle given the failure of Allen A. Atwood, Jr. to exercise his power of appointment over Trust "B." Therefore, due to Nephews' lack of financial interest, and therefore standing, their appeal is denied and the trial court's judgment granting payment of fees and charges against Trust "B" is affirmed.

## PART III

## CONCLUSION

¶ 36 The trial court's decision granting summary judgment in favor of the trial court defendant, Roger Atwood, is affirmed as is the trial court's denial of the trial court defendants', Allen Atwood III and Peter M. Atwood, motion for summary judgment.

¶ 37 The trial court's grant of attorney fees and charges against Trust "B" is affirmed.

¶ 38 AFFIRMED.

¶ 39 TAYLOR, J., and COLBERT, J. (sitting by designation), concur.