2017 OK CIV APP 25

**In the MATTER OF the ESTATE OF Christopher H. PIERCE, Deceased.**

**Vanessa Pierce, Petitioner/Appellee,**

**v.**

**Colin Pierce, Caitlin Pierce and Christian Pierce, Appellants.**

Case Number: 114366

Court of Civil Appeals of Oklahoma, Division No. 4.

Decided: 12/13/2016

Mandate Issued: 05/11/2017

Jeffery S. Ludlam, Trevor S. Pemberton, HALL & LUDLAM, Oklahoma City, Oklahoma, for Appellants.

Kurt M. Rupert, Amy J. Sine, HARTZOG CONGER CASON & NEVILLE, Oklahoma City, Oklahoma, for Appellee.

JOHN F. FISCHER, JUDGE:

¶1 Appellants Colin Peirce, Caitlin Pierce, and Christian Pierce are the adult children of Christopher Hannah Pierce (Pierce), deceased. They appeal the district court's September 22, 2015 and October 21, 2015 orders denying their motions for partial summary judgment and granting Appellee Vanessa Pierce's motions for partial summary judgment.[1] Appellants' motions challenged the va-

1. Vanessa appears in this appeal as the personal representative of the estate of Christopher H. Pierce and as Guardian of her minor son, CP.

lidity of Pierce's devise in his 2013 Will of an interest in real property to Vanessa and their minor son, CP, arguing that the devise was superseded by a prenuptial agreement between Vanessa and Pierce. Appellants also argue that the devise to Vanessa and her son was ineffective to exercise a power of appointment regarding the property granted to Pierce in a trust that held title to the property. The district court's ruling that the devise in Pierce's Will was not precluded by the parties' prenuptial agreement is affirmed. The district court's ruling that the devise to Vanessa of a life estate in the property was invalid because she was not an object of the power of appointment is also affirmed. Finally, we affirm the district court's ruling that Pierce did effectively exercise his power of appointment regarding this real property in favor of his minor son.

## BACKGROUND

¶2 On October 18, 1994, Virginia Mae Pierce, Pierce's mother, executed the Christopher Hannah Pierce 1994 Irrevocable Trust Agreement. Pierce was the primary beneficiary of the Trust. Title to a home located in Nichols Hills, Oklahoma, was held in the name of the Trust. The Trust granted Pierce the power to appoint by will all, or any part of, the principal of the Trust to or for the benefit of "the issue of [Pierce] living on the date of the exercise of this power of appointment.... However, that no appointment shall benefit directly or indirectly persons other than members of the restricted group who are the objects of this power...." Appellants and Pierce's minor son, CP, are members of the "restricted group" and objects of the power of appointment. Vanessa is neither. The Trust also provides in paragraph 4.12 that the "power of appointment ... granted herein may be exercised by the holder thereof only if specific reference to the power granted herein is made in the document purporting to exercise such power."

¶3 Pierce and Vanessa were married in 1996. Prior to their marriage, they entered into a prenuptial agreement dated March 14, 1996. The Agreement provides that, if Pierce predeceased Vanessa, she would receive specified financial support, certain personal property and be designated as the beneficiary of his life insurance policy. After Pierce and Vanessa married, they had one son, CP. Appellants are Pierce's children from his previous marriage.

¶4 On July 26, 2013, Pierce executed his Last Will and Testament. In addition to specific bequests to Vanessa, Appellants and CP, Article 2, Section 4 of the Will provides:

> I own a beneficial interest in a Trust, said Trust having title to the property located [in Nichols Hills, Oklahoma]. I hereby give, devise and bequeath to my wife ... a life estate in said real property.... The remainder of my beneficial interest in said property I hereby give, devise and bequeath to my son, [CP].

Pierce died on June 16, 2014, and Vanessa filed a petition to probate his Will. The district court admitted the Will to probate and appointed Vanessa as personal representative of Pierce's estate.

¶5 In the first motion for partial summary judgment Appellants filed in the probate proceeding, they asserted that the 1996 prenuptial agreement superseded Pierce's 2013 Will and controlled the disposition of property to Vanessa. Appellants contended that, as a result, Vanessa agreed she would be entitled to only the property designated in that Agreement. Vanessa responded with her own motion for partial summary judgment. She argued that nothing in the prenuptial agreement prohibited her from receiving the assets specified in Pierce's Will. Rather, she contended that in the Agreement the parties merely released rights they might otherwise have had in each other's property. Vanessa maintained the prenuptial agreement was the "floor" level of support Pierce agreed to provide on divorce or death, and nothing prevented him from choosing to provide more for her in his Will than that minimum amount.

¶6 In their second motion for partial summary judgment, Appellants asserted that Pierce failed to properly exercise in his Will the power of appointment granted to him by the Trust. Specifically, Appellants argued that Pierce's purported devise of the Nichols

Hills property in his Will violated paragraph 4.12 of the Trust because that devise did not "reference the power granted" in the Trust. In the alternative, Appellants argued that the exercise of the power failed because CP was not an object of the power contemplated by the Trust. Again, Vanessa responded with her own motion for summary judgment.

¶ 7 In two orders dated September 22, 2015, and October 21, 2015, the district court ruled that Vanessa was not precluded by the prenuptial agreement from receiving additional property from Pierce, and she was not an object of the power of appointment and could not be appointed a life estate in the Nichols Hills property, but Pierce had effectively exercised the power of appointment in his Will conveying the remainder interest in the Nichols Hills property to CP. Appellants challenge the ruling on the effect of the prenuptial agreement and the validity of the conveyance to CP in this appeal.[2]

## STANDARD OF REVIEW

¶ 8 Title 12 O.S.2011 2056 governs the procedure for summary judgment in this case. A motion for summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* The de novo standard controls an appellate court's review of a district court order granting summary judgment. *Carmichael v. Beller*, 1996 OK 48, ¶2, 914 P.2d 1051. De novo review involves a plenary, independent, and non-deferential examination of the district court's rulings of law. *In re Estate of Bell-Levine*, 2012 OK 112, ¶5, 293 P.3d 964.

## ANALYSIS

¶ 9 As previously noted, Appellants raise two issues in this appeal. First, they contend the district court erred in holding that Vanessa is not precluded by the prenuptial agreement from receiving the property des-

ignated in Pierce's will. Second, they contend that the district court erred in finding that Pierce had properly exercised in his Will the Trust's power of appointment regarding the Nichols Hills property.

### I. Argument Regarding the Prenuptial Agreement

¶ 10 Appellants maintain that the express language of the prenuptial agreement controls and prohibits Vanessa from receiving the interest in the Nichols Hills property devised to her in Pierce's will. Appellants cite paragraph 2 of the prenuptial agreement, which provides:

> Release of Property Rights by [Vanessa]. Except as hereinafter provided in paragraph 3, [Vanessa] hereby releases all rights in the property and estate of [Pierce] which she may have by reason of their marriage, whether by way of dower, statutory allowance, intestate share, will, homestead, or otherwise under the laws of any jurisdiction that may be applicable.

Appellants argue that the only exception to Vanessa's release of all rights in Pierce's property and estate is contained in paragraph 3 of the prenuptial agreement. That paragraph provides, in relevant part:

> 3. Provision for Vanessa.... In the event that [Pierce] and Vanessa divorce (or in the event [Pierce] predeceases Vanessa at any time after their marriage to one another), [Pierce] or his estate shall pay to Vanessa as a complete and final division of property (support alimony) if divorce be applicable, and/or as her share of any marital estate if provisions for death be applicable:

> In addition:

> A. Vanessa will become beneficiary on an insurance policy on [Pierce's] life in the amount of $100,000.00 (the "Life Insurance Policy").

> Vanessa may take from the home any linens, kitchen items, furniture or gifts received by them in common, and in addition

---

2. Appellants appealed the trial court's September 22, 2015 order in Case No. 114,366, and appealed the district court's October 21, 2015 order in Case No. 114,413. By order entered on Novem-
ber 9, 2015, the Oklahoma Supreme Court ordered the cases consolidated under surviving Case No. 114,366.

Vanessa will receive the following payments:

. . . .

(e) So long as [Pierce] and Vanessa are husband and wife and thereafter if they are husband and wife and [Pierce] predeceases Vanessa, [Pierce] or his estate will provide medical insurance for [Vanessa]. . . .

. . . .

(g) In the event [Pierce] dies before Vanessa, and [Pierce] and Vanessa are married at the time of [Pierce's] death, [Pierce's] estate shall [sic] Vanessa the sum of $1000.00 per month for the rest of her life or until she remarries or cohabits. . . .

Appellants conclude that Vanessa is limited to the specific property specified in the Agreement because she agreed to release "all rights" in any other "property and estate of [Pierce]."

¶ 11 In addition to the language of the prenuptial agreement, Appellants cite 84 O.S. 2011 44(B)(1), for the proposition that a will is "subservient" to a prenuptial agreement. They argue that Pierce could not, by will, alter the division of property contained in the prenuptial agreement. Section 44(B)(1) provides, in relevant part:

Every estate in property may be disposed of by will except that a will shall be subservient to any antenuptial marriage contract in writing. In addition, no spouse shall bequeath or devise away from the other so much of the estate of the testator that the other spouse would receive less in value than an undivided one-half (1/2) interest in the property acquired by the joint industry of the husband and wife during coverture. No person shall by will dispose of property which could not be by the testator alienated, encumbered or conveyed while living, except that the homestead may be devised by one spouse to the other.

¶ 12 Vanessa argues that the prenuptial agreement and the Will can co-exist. She cites paragraph 4 of the prenuptial agreement.

4. Separate Property. Each party shall have complete control of his or her separate property and may enjoy and dispose of such property in the same manner as if the marriage had not taken place. The foregoing shall apply to all property now owned by either of the parties and to all property which may hereafter be acquired by either of them in an individual capacity. . . .

Vanessa asserts that the prenuptial agreement merely establishes the floor level of financial support and the minimum amount of property that Pierce agreed to give her before they were married. She concludes that, pursuant to the "complete control" of his property retained by Pierce through paragraph 4, Pierce was free to give her additional property during his lifetime or on his death.

¶ 13 Additionally, Vanessa argues that Appellants have misconstrued section 44(B)(1). She contends that this statute only applies when a surviving spouse is electing to take a forced share of a deceased spouse's estate in lieu of what is provided by the deceased spouse's will. Vanessa's construction of section 44(B)(1) is correct. Section 44 "limits a spouse's power to disinherit the surviving spouse; the statute secures to a surviving spouse the right to elect a minimum statutory share in the deceased spouse's estate. . . ." *In re Estate of Jackson*, 2008 OK 83, ¶21, 194 P.3d 1269. However, where the parties have addressed these matters in a prenuptial agreement, section 44 simply provides that the surviving spouse may not invoke a statutory right to elect a greater portion of the deceased spouse's estate than that specified in the prenuptial agreement. Section 44 does not address, or therefore preclude, a voluntary gift, devise or bequest of property to the surviving spouse in addition to that specified in a prenuptial agreement.

¶ 14 Although section 44 provides that Pierce's Will is "subservient" to the prenuptial agreement, the prenuptial agreement specifically provides that Pierce retained "complete control of his . . . separate property and [that he] may enjoy and dispose of such property in the same manner as if the marriage had not taken place." One who retains "complete control" of his property may voluntarily give that property to anyone,

including a surviving spouse, either during his lifetime or on his death. *See Stone v. Easter*, 1923 OK 850, ¶6, 93 Okla. 68, 219 P. 653 (ownership of real property and a restraint on alienation of that property are generally incompatible); *Crookum v. Ketchum*, 1935 OK 851, ¶0, 174 Okla. 468, 50 P.2d 710 (Syllabus 3) (ownership includes the right to dispose of property). Vanessa might have waived her right to elect a spouse's "minimum statutory share" when she signed the prenuptial agreement, but Pierce did not waive his right to give his property to Vanessa when he signed that agreement. The district court's September 22, 2015 order granting Vanessa's motion for partial summary judgment and denying the Appellants' first motion for summary judgment regarding the effect of the prenuptial agreement is affirmed.

## II. Argument Regarding the Power of Appointment

¶ 15 For their next assignment of error, Appellants contend that the district court erred in finding that Pierce effectively exercised in his Will the power of appointment granted to him in the Trust. Their argument takes two forms. First, Appellants contend Pierce's exercise of the power failed because he did not comply with the Trust requirement to refer to the power of appointment in his Will. Second, Appellants argue that, even if that requirement can be excused, the Nichols Hills property was not appointed to an object permitted by the donor power.

### A. Compliance with the Reference Requirement

■ ¶ 16 The power of appointment is stated in paragraph 4.04 of the Trust.

Power of Appointment. The Settlor hereby gives and grants to [Pierce] a power to appoint by Will all or any part of the principal of the trusts set aside for [Appellants] to or for the benefit of any one or more of the following: The issue of [Pierce] living on the date of the exercise of this power of appointment.... Subject to the above restrictions, in the exercise of this power of appointment, [Pierce] may appoint outright or in trust ... and, general-

ly, he may appoint in any manner; provided, however, that no appointment shall benefit directly or indirectly persons other than members of the restricted group who are the objects of this power....

To exercise this power with respect to the Nichols Hills property, Pierce included the following language in Article 2, Section 4 of his Will:

I own a beneficial interest in a Trust, said Trust having title to the property located [in Nichols Hills]. I hereby give, devise and bequeath to my wife ... a life estate in said real property.... The remainder of my beneficial interest in said property I hereby give, devise and bequeath to my son, [CP].

¶ 17 As Appellants correctly point out, there is no reference to the power of appointment granted by the Trust in Pierce's Will. Appellants argue that reference to the power of appointment is required by paragraph 4.12 of the Trust.

Exercise of Powers of Appointment. A power of appointment ... granted herein may be exercised by the holder thereof only if specific reference to the power granted herein is made in the document purporting to exercise such power.

Appellants argue that Pierce's failure to satisfy this reference requirement renders his exercise of the power of appointment in his Will ineffective. Appellants' position is contrary to the law of this State.

¶ 18 In 1977, the Oklahoma Legislature adopted the Power of Appointment Act. *See* 60 O.S.2011 299.1 to 299.16. The Act uncovered the "bindweed and brambles" of existing law and restored the common law of powers of appointment except as altered by statute. Joseph F. Rarick & Robert Henry, *The Oklahoma Powers of Appointment Act of 1977*, 32 Okla. L. Rev. 787, 789 (1979). *See also*, 60 O.S.2011 299.1 ("The common law of powers is hereby declared to be the law in this state, except as modified by statute."). According to the Commentary informing the legislative history of the Act, the Act does not codify the entire common law of powers of appointment but is only "in part declaratory and in part amendatory of the common

law." Rarick & Henry at 792 (quoting Dean Fraser's Commentary on the Minnesota legislation after which Oklahoma's Act was patterned). With respect to matters not addressed in the Act: "The *Restatement* is considered to reflect the better view of the common law." *Id.* at 794 (emphasis in original). *See also, Edwards v. Urice,* 2004 OK CIV APP 86, ¶22, 99 P.3d 256 (adopting the Restatement (Second) of Property: Donative Transfers (1986), "to the extent there is no statutory authority or case law to the contrary"). In our view, *Edwards* states the correct relationship between the Act and the Restatement.

19 Appellants cite two Opinions from this Court and various sections of the Restatement (Second) in support of their contention that Pierce's exercise of the power was ineffective because his Will did not refer to the power of appointment as required by the donor of that power.[3] First, they rely on *Edwards* and sections 17.1 and 18.2 of the Restatement. *Edwards* is not helpful, because failure to comply with the donor's reference requirement was not an issue in that case. In *Edwards,* the document exercising the power of appointment did refer to the document creating the power. Sections 17.1 and 18.2 do not resolve this issue either. Section 17.1 provides that for a donee to effectively exercise a power of appointment, it must be established "(1) That the donee intended to exercise it; and (2) That the expression of the intention complies with the requirements of exercise imposed by the donor and by rules of law." Section 18.2 provides:

> The formal requisites of an appointment are satisfied if the appointment complies with the formalities required by law ... and with any additional formalities the donor specifies.

Restatement (Second) of Property: Donative Transfers 18.2. These general statements requiring compliance with formalities imposed by the donor are subject to exceptions.

¶ 20 The second sentence of 60 O.S.2011 299.4 provides: "When the power of appointment directs that formalities in addition to those prescribed in this act be observed in the execution of the power, the direction may be disregarded." Neither section 17.1 nor section 18.2 addresses the issue of whether a reference requirement is a formality that can be disregarded. Even so, to the extent that sections 17.1 and 18.2 state a general principle of common law inconsistent with the statutory language in the second sentence of section 299.4, the statute controls. "The common law of powers is hereby declared to be the law in this state, except as modified by statute." 60 O.S.2011 299.1.

¶ 21 Further, as provided in the comments to section 17.1: "Failure by the donee to comply with the formal requirements imposed by the donor in regard to the exercise of a power may prevent an effective exercise of it ... (but see [18.3].")." Restatement (Second) of Property: Donative Transfers 17.1 cmt. b. Section 18.2 provides: "Except as provided in 18.3, an appointment is ineffective if the appointment does not comply with the formal requisites of an appointment." *Id.* 18.2. Appellants neither cite nor discuss section 18.3 of the Restatement. Section 18.3 provides that failure of a donee of a power of appointment to satisfy a formality required by the donor of the power "does not cause the appointment to be ineffective in a court applying equitable principles if (1) The appointment approximates the manner of appointment prescribed by the donor; and (2) The appointee is (a) A natural object of the donee's affection." *Id.* 18.3. The Trust provides the manner by which Pierce could exercise the power of appointment; that is, "by Will." And, those in favor of whom the power was exercised are natural objects of Pierce's affection. Therefore, the appointment in Article 2, Section 4 of Pierce's Will satisfies the requirements of section 18.3 of the Restatement.

¶ 22 Appellants also cite *In re Allen A. Atwood Trust,* 2001 OK CIV APP 49, 23 P.3d

---

**3.** Although Appellants rely on the Restatement (Second), the American Law Institute adopted a third statement of the law in this area. *See* Restatement (Third) of Property: Wills & Donative Transfers (2011). The Restatement (Third) has not been adopted by the Oklahoma Supreme Court. Nonetheless, we find no material difference between the Second and Third versions of the relevant Restatement sections.

309, as did the district court. *Atwood* involved a dispute between the sons of the holder of a power of appointment and the holder's estranged brother, the sons' uncle. Another Division of this Court applied a Virginia statute that prohibited a general disposition of property in the residual clause of a will from being interpreted as exercising a power of appointment absent a "contrary intention" expressed in the will. *See* Va. Code Ann. 64.1-67 (1985). Finding nothing in the will expressly purporting to exercise the power, the Court concluded that Virginia law prevented the will from being interpreted as an exercise of the power of appointment resulting in the receipt by the brother of the property subject to the power.

¶ 23 Nonetheless, Appellants rely on *Atwood* for the proposition that failure to refer to a power of appointment in the instrument exercising that power invalidates the purported exercise pursuant to Oklahoma law. In *Atwood*, the sons relied on Oklahoma law to argue that the absence of a reference to the power of appointment in their father's will could be disregarded citing section 299.4. Although finding that conflicts of law principles required the application of Virginia law, the *Atwood* Court rejected the sons' Oklahoma law argument. The *Atwood* Court based its discussion on the original common law rule "that when a donor requires reference to the power of appointment in the instrument exercising that power, then the failure to provide that reference results in the power not being exercised." *Atwood*, 2001 OK CIV APP 49, ¶31, 23 P.3d 309. On this point, we find *Atwood* unpersuasive. First, the *Atwood* Court's discussion of Oklahoma law is *obiter dictum*. *Kuykendall v. Gulfstream Aerospace Techs.*, 2002 OK 96, ¶8, 66 P.3d 374 (differentiating between the holding of a case and *obiter dictum*, "a statement in a decision that is unnecessary to support the conclusion reached"). Second, it is clear from both the second sentence of section 299.4 and section 18.3 of the Restatement that this is no longer the common law rule in Oklahoma.

¶ 24 To reach this conclusion, the *Atwood* Court found that "the second sentence of Section 299.4 accomplishes the elimination of the need for any additional formality in the execution of the document creating the power of appointment." *Atwood*, 2001 OK CIV APP 49, ¶20, 23 P.3d 309 (emphasis in original). The *Atwood* Court's discussion of section 299.4 is inconsistent with our interpretation of that statute. As the second sentence of section 299.4 makes clear, the formalities eliminated by the statute are only those that the "power of appointment directs...." 60 O.S.2011 299.4. Presumably, the donor of the power satisfied any formalities the donor deemed necessary "in the **execution** of the document creating the power of appointment." *Atwood*, 2001 OK CIV APP 49, ¶20, 23 P.3d 309 (emphasis in original). Therefore, formalities directed by the donor "in the execution of the power," once created, are the only formalities to which the second sentence of section 299.4 could refer. 60 O.S.2011 299.4. The issue here is whether we can disregard a formality regarding execution of the appointment required by the donor of the power, but not required by the Power of Appointment Act. The second sentence of section 299.4 clearly states that the formality may be disregarded if the formality exceeds the formality required by the Act. We agree with Rarick and Henry that "section 299.4 manifests a legislative determination that the Powers of Appointment Act provides for sufficient formalities to safeguard the authenticity of the exercise of a power...." Rarick & Henry at 796-97.

¶ 25 The *Atwood* Court also held that "the second sentence of Section 299.4 achieves the single function of dispensing with procedural formalities." *Atwood*, 2001 OK CIV APP 49, ¶25, 23 P.3d 309. We disagree. The issue is not whether a formality is "procedural" but whether compliance with the formality is "significant" in accomplishing the donor's purpose in creating the power. "The formal requisites of an appointment described in 18.2 include both the formal requisites that are significant and those that are of minor importance." Restatement (Second) of Property: Donative Transfers 18.3 cmt. a. "Whenever the donor imposes formal requirements with respect to the instrument of appointment that exceed the requirements imposed by law for such instrument, the donor's purpose in imposing additional formal requirements must be determined." *Id.* at cmt. b.

"Unless some significant purpose is accomplished by an additional formal requisite imposed by the donor, equitable relief from the rigid enforcement of such additional formality is available." *Id.* at cmt. a.

¶ 26 We find no significance to the reference requirement in the Trust other than to ensure that Pierce did not inadvertently exercise that power of appointment.[4] Inadvertent appointment is not an issue in this case. It is clear from Article 2, Section 4 of Pierce's Will that he was intending to exercise the power of appointment over the Nichols Hills Property granted to him by the Trust: "I own a beneficial interest in a Trust, said Trust having title to the property located [in Nichols Hills]. I hereby give, devise and bequeath ... said real property...." First, the beneficial interest described is Pierce's power to appoint the ultimate owner of the property. Second, if "a donee, sufficiently identifying property covered by a power, purports to dispose of the property by deed or will, the donee thereby manifests an intent to exercise the power." Restatement (Second) of Property: Donative Transfers 17.4. Although omitted in this Opinion, Pierce's Will includes the full street address of the Nichols Hills property "sufficiently identifying" that property. Appellants do not argue otherwise.

¶ 27 Formalities required by the Power of Appointment Act with respect to the document executing a power of appointment "are always regarded as fulfilling a significant purpose" and must be observed. Restatement (Second) of Property: Donative Transfers 18.3 cmt. b. For example, section 299.3 of the Act provides:

> A donee may exercise a power of appointment only by an instrument executed with sufficient formalities to pass title to the property covered by the power. When a power of appointment is exercisable only

by will, a donee may not exercise it by deed.

The Trust power of appointment specified that Pierce's interest could be appointed only by will. Pierce satisfied this formality, and his Will was sufficient to convey his interest in the Nichols Hills property. "Any will, devising real estate or any interest therein ... may be filed and recorded in the office of the register of deeds, with like effect as a deed duly executed and acknowledged." 16 O.S. 2011 30. However, reference to the document creating his power of appointment in the Will exercising that power is not a formality required by the Powers of Appointment Act, and it is not a formality that is necessary "to pass title to the property covered by the power." 60 O.S.2011 299.3. As comment h to section 18.2 of the Restatement (Second) of Property notes, Oklahoma is among those states that have adopted statutes that "provide that additional formalities imposed by the donor may be ignored." Therefore, even though Pierce ignored the direction in the Trust to reference the Trust's power of appointment in his Will, Pierce's Will was sufficient to transfer his beneficial interest in the Nichols Hills property pursuant to the Act. "The formal requisites of an appointment are satisfied if the appointment complies with the formalities required by law...." Restatement (Second) of Property: Donative Transfers 18.2. We find that Pierce was not required to reference the Trust in order to effectively exercise the power of appointment granted to him in that document.

## B. The Appointment to Vanessa and CP

■ ¶ 28 In the alternative, Appellants argue that, even if Pierce's failure to refer to the Trust's power of appointment in his Will can be excused, the appointment of the Nichols Hills property "violated the limitations of

---

4. Appellants cite a Utah Court of Appeals decision holding that reference requirements "have a well reasoned [sic] purpose, which is to insure [sic] a considered and intentional, rather than an inadvertent exercise of the power" and finding that "strict and literal compliance" has been the law in that state for "over a hundred years." *In re Estate of Burgess*, 836 P.2d 1386, 1390-92 (Utah Ct. App. 1992). If that ever was the law in Oklahoma, it is not now for the reasons stated in this Opinion. Further, *Burgess* premised its holding on an ownership principle. "[T]he estate that is being appointed belongs to the donor ... and so the donor may impose conditions on the exercise of the power." *Id.* Rarick and Henry criticize this approach expressing their "strong" view that excusing a donor's additional formalities is "sound" legislation. Rarick & Henry at 796. We agree.

the donor and fails." Vanessa is not an object of Pierce's power of appointment and, therefore, as the district correctly found, she cannot be appointed an interest in the Nichols Hills property. Consequently, that portion of the district court's order finding that the appointment of a life estate in the Nichols Hills property to Vanessa was an invalid exercise of Pierce's power of appointment is affirmed.

¶ 29 However, failure of the appointment to Vanessa does not necessarily invalidate the appointment to CP. "If one part of an appointment is ineffective and another part, if standing alone, would be effective, the effective part is given effect...." *Id.* 23.1. Appellants no longer argue that CP is not an object of the power of appointment to whom Pierce could appoint an interest in the Nichols Hills property. It is undisputed that CP was an "issue of [Pierce's] living on the date of the exercise of this power of appointment." Appellants' argument appears to be that the appointment to CP fails because Vanessa will indirectly benefit from that appointment as CP is a minor and Vanessa is still living with him in the property. As Vanessa points out, that construction would invalidate any appointment of the property to any of the Appellants who are married, because their spouses would "indirectly benefit" from the appointment. We find no support for this construction in the language of the Trust.

¶ 30 That portion of the district court's October 21, 2015 order finding that Pierce's appointment of the remainder of his interest in the Nichols Hills property to CP is affirmed. As a result, CP owns the Nichols Hills property in fee. *Berry v. Cooley*, 1940 OK 473, ¶33, 188 Okla. 426, 109 P.2d 1081 (holder of remainder interest subject to a contingency vested with an absolute estate in fee simple on the happening of the contingency); 60 O.S.2011 28 ("A future estate may be limited by the act of the party to commence in possession at a future day ... on the termination, by lapse of time, or otherwise, of a precedent estate, created at the same time.").

## CONCLUSION

¶ 31 The district court correctly determined that the 1996 prenuptial agreement between Christopher and Vanessa Pierce did not prevent Christopher Pierce from giving any of his property to Vanessa. Therefore, the district court's September 22, 2015 order is affirmed. As the district court correctly determined, Vanessa was not an object of the power of appointment granted to Pierce in the Trust his mother created. The appointment of a life estate in the Nichols Hills property to Vanessa failed. Nonetheless, the failure of the appointment to Vanessa does not invalidate the appointment of the remainder interest in that property to Pierce's son, CP. The requirement that Pierce reference the power of appointment in the Trust when exercising his power of appointment is a formality that can be excused pursuant to Oklahoma law. Consequently, Pierce's failure to reference the Trust's power of appointment in his Will did not invalidate the appointment to CP. The district court's October 21, 2015 order is affirmed. As a result, CP owns the Nichols Hills property in fee.

¶ 32 **AFFIRMED.**

WISEMAN, P.J., concurs, and GOODMAN, C.J., dissents.

JERRY L. GOODMAN, C.J., dissenting:

¶ 1 I respectfully dissent from Part II of the Majority's Opinion.

¶ 2 As the Majority notes, Virginia Mae Pierce executed the Christopher Hannah Pierce 1994 Irrevocable Trust Agreement (Trust) on October 18, 1994. Christopher Hannah Pierce (Pierce) is a primary beneficiary of the Trust. The Trust grants Pierce the power to appoint by will all or any part of the principal of Trust to or for the benefit of "the issue of [Pierce] living on the date of the exercise of this power of appointment.. However, that no appointment shall benefit directly or indirectly persons other than members of the restricted group who are the objects of this power.." Trust further provides in 4.12 that "a power of appointment. granted herein may be exercised by the holder thereof only if specific reference to the

power granted herein is made in the document purporting to exercise such power."

¶ 3 Pierce executed his Last Will and Testament (Will) on July 26, 2013. Article 2, Section 4 of the Will provides:

I own a beneficial interest in a Trust, said Trust having title to the property located at [Nichols Hills property]. I hereby give, devise and bequeath to my wife. a life estate in said real property, .. The remainder of my beneficial interest in said property I hereby give, devise and bequeath to my son, [CP].

¶ 4 The parties dispute whether Pierce effectively exercised the power of appointment granted him in the Trust through his Will. Appellants contend Pierce's purported exercise of the power of appointment in his Will failed to conform to the Trust's formal requirements. Appellee disagrees, asserting the Trust grants Pierce broad and expansive appointment power that he exercised in favor of CP. Appellee further asserts Oklahoma law expressly excuses the performance of technical formalities of the type Appellants insist, citing 60 O.S.2011, 299.4, which provides:

A power of appointment authorized to be exercised by an instrument which would not be sufficient to transfer title to the property covered by the power shall not be void, but its execution shall conform to the provisions of this act. When the power of appointment directs that formalities in addition to those prescribed in this act be observed in the execution of the power, the direction may be disregarded.

¶ 5 The Court of Civil Appeal (COCA) addressed 299.4 in *In the Matter of Allen A. Atwood Trust*, 2001 OK CIV APP 49, 23 P.3d 309. COCA rejected Appellee's interpretation of 299.4, stating:

The statutes use the word "formalities" in two other instances. The first, in Section 299.2, deals with the *execution* of an instrument which creates the power of appointment. The second, Section 299.3, relates to formalities of *execution* of the instrument purporting to *exercise* the power of appointment. Clearly, the second sentence of Section 299.4 accomplishes the elimination of the need for any additional formality in the *execution* of the document

creating the power of appointment. This construction is supported by the author of the Bill leading to the enactment of Section 299.4 and Professor Rarick. Joseph F. Rarick and Robert Henry, *The Oklahoma Powers of Appointment Act of 1977*, 32 Okla. L. Rev. 787, 796-97 (1979). There, the authors note that Section 299.4 deals with matters of *execution* and simply avoids pitfalls attendant to failure to follow the rules regarding execution of the applicable instrument. In summary, under this construction, Section 299.4 simplifies the requirements for execution of a document creating a power of appointment or a document exercising the power of appointment..

This construction also coincides with prior Oklahoma law and the Restatement (First) of Property 346 (1977). Pursuant to the Restatement, when exercising the power of appointment, the donee was required to observe the formalities imposed by law and by the donor for the execution of the instrument of appointment. However, as noted in the comments, some state statutes declared that a donor's demand for greater formalities in the execution of the instrument of appointment may be disregarded. Oklahoma was one such state. 60 O.S.1971, 229-230. Thus, current law as codified by Section 299.4, continues the previous law abrogating the need to conform to additional demands of formality in the execution of the appointment instrument that may be imposed by donor.

However, cases have used the term "exercise of the power" interchangeably with "execution of the power." Thus, the next question asks what effect, if any, does Section 299.4 have on the common law rule. The generally accepted common law rule is that a donor of a power of appointment may place limitations on the exercise of the power, such as were contained in Allen, Sr.'s Trust, and, when that occurs, the donee must comply with the limitations..

Therefore, if "execution of the power," as used in the second sentence of Section 299.4, can be interchanged with "exercise of the power" and the phrase also means that instructions as well as procedural for-

malities may be disregarded, then Section 299.4 is in derogation of the common law. In such case the statute is to be liberally construed with a view to effect its object and to promote justice. 25 O.S.1991, 29. However, statutory alterations of the common law must be clearly and plainly expressed and an intent to effect a change will not be inferred from ambiguous or inclusive text. Jones v. Oklahoma Natural Gas Co., 1994 OK 89, ¶17, 894 P.2d 415, 419-20.

This Court holds that the second sentence of Section 299.4 achieves the single function of dispensing with procedural formalities. There is not a clear intent in the statute's language to do anything other than to continue the rule of dispensing with excess formality in the execution of a document. However, Section 299.4 does not alter the rule that a donor may place limitations upon the scope and extent of the power, and that such limitations are controlling.

*Id.* at ¶¶19-22, 24-25 (emphasis in original).

¶6 COCA continued this construction of powers of appointment in *Edwards v. Urice,* 2004 OK CIV APP 86, 99 P.3d 256, citing with approval the Restatement Second, Property (Donative Transfers) 17.1, which provides:

[i]n order for a donee to exercise a power effectively it must be established: (1) That the donee intended to exercise it; and (2) That the expression of the intention complies with the requirements of exercise imposed by the donor and by rules of law.

*Id.* at ¶15, at 259-60. "The formal requisites of an appointment are satisfied if the appointment complies with the formalities required by law for the transfer by the donee of owned property that is similar to the appointive property and with any additional formalities the donor specifies." *Edwards,* at ¶15, at 260 (citing Restatement (Second) of Property (Donative Transfers) 18.2).

¶7 Accordingly, I find Pierce failed to effectively exercise the power of appointment in accordance with the Trust's formal requirements. Pierce did not specifically reference the power of appointment in his Will as required by the Trust in 4.12. Rather, the Will contains a general reference to a trust and property held by a trust. In addition, Pierce attempted to leave an interest, a life estate, to an individual that was not an "issue," *i.e.,* Vanessa, in direct contravention to the directives of the Trust. Accordingly, Pierce's purported exercise of the power of appointment failed to conform to the Trust's formal requirements and was therefore ineffective. I would reverse the trial court's order granting Appellee summary judgment.